Good morning, Your Honors. David Bobet, appearing on behalf of the appellant Gregory Murray, who flew out here from Sarasota, Florida, to be with us today. Your Honor, this case is a rather unusual case. I do a lot of juvenile dependency work. I've never seen anything quite like it. This is a case about having the courthouse door slammed in your face and not being allowed to participate in proceedings in which you have a serious and fundamental interest. Yeah. The first problem is we have absolutely disparate stories about what happened. We absolutely do, which is why the summary judgment motion should not have been granted.  We absolutely do, which is why the summary judgment motion should not have been granted. Because the defendants claim they notified him about everything, and he says they notified him about nothing, essentially. That's right. That's right. And he attempted to get a paternity test done. Well, what does that mean, he attempted to get? What did he do? Okay. Well, what he did was he was involved in a dissolution of marriage proceeding in Florida. And some of those papers are in the record here, so you can see that he actually requested a paternity test. He also made similar requests to the social workers. Since he didn't have access to the court, he didn't have a lawyer, and that these are secret proceedings which you can't call up and find out about, he was stuck, because the social worker wouldn't do anything. First Castillo wouldn't do anything, and then Andrade wouldn't do anything. And it wasn't until the third one. And how would they have done that? He was in Florida and the child was in California. So I don't know the answer to that, but what would the logistics have been? Well, the child was in the care of the mother in California, and then ultimately was removed in August of 06 and was then in custody of the Department of Social Services. The father requested the paternity test from the social workers. She stonewalled him on that, and it was the order in Florida was ineffective because he couldn't serve her with the order. He couldn't find her. She had disappeared. And he hired an investigator to look for her. But at some point, she apparently wrote a letter to the court in Florida. Right. That was before that. That was at that point. There's a paper where the reply where he says he denies he's the father or responds scientific testing, signed by his lawyer. Right. So then what happened? Well, what happened there is when he left her in California, he didn't know that she was pregnant. And the first information that she receives was this letter that was served on him when in the dissolution proceedings, which the court construed as a response to his petition for dissolution. That's the first allegation that was made. And as we explain in our declaration filed in opposition to the motion, she had made claims of being pregnant before and had used pregnancy as a kind of way of manipulating him into doing certain things or not doing certain things. So he had the fact that she wrote that and presented it to the court was not. What was the date of that, this reply to Respondent Sandstrom? What was the date of that? It doesn't have a date on it. I show that the response was filed on October 5th, 2005. I think there's a little file stamp up in the corner. It's all before the child was born. Before the child was born. Okay. So Mr. Murray had reasons to be. Can you do a paternity test on an unborn child? I'm sorry? Can you do a paternity test on a child that's not born yet? I don't know. I don't know. But he was trying to do it afterwards as well because, let's see, the child was born on February 19th, 2006. And at this point, the child was still with the mother. She was still getting her voluntary family maintenance program services. And it wasn't until August that the child was removed. And probably not until August that his paternity would have been much of an issue for the county because the child was still with the mother. And no proceedings had been taken to remove the child until August of 06. Now, at that point, he was entitled to be given notice of the detention hearing. He was entitled to a copy of the petition. He was a copy of the advisement of his rights. He was entitled as an alleged father or a presumed father or an actual father. It doesn't matter. Alleged fathers were entitled to notice as well. Presumed fathers may be entitled to lawyers. I mean, they are entitled to lawyers under California law. And they're definitely entitled to participate. By this time, had he gotten a court decree that he was not the father? He probably got that. I believe the decree was around the same time as the removal, maybe a little bit later. It was in September, and the other was in August. Right. Right. What did he make in the attempt? But he did know in August that there was a removal. He spoke to the – he – the one point that everybody agrees on is that he did speak to the caseworker in August. After the child had been removed. Right. Did he do anything then about getting a paternity test? He wanted to get involved in the case, and he told the social worker that he wanted to be involved in the case. Did he say he wanted a paternity test? Yes. He told that to both social workers. He told that to Andrade in August, and he told that to Castillo in February. He – if this was his daughter, he wanted to step up to the plate and take responsibility. Did he tell that to the Florida court? He did. Florida court ordered a paternity test at his behest. And what happened? They ordered it. They granted his request, but mom had disappeared. She had left. And then after that, they declared that he was not the father? Right. Because there was an absence of evidence on the issue of paternity. Did he say that he did not want to be – have a decree that he was not the father? Absolutely not. He never said he didn't want to be. Well, but he told the court that he was not – there were no children. He – well, first of all, this is all being done through his lawyer. He's never – he never said a word. Everything's done by lawyers. But the point of it is, Judge Reinhart, he was persistent in trying to determine what his legal rights were right from the beginning. Well, what bothers him is that after all of that, he asked for a decree from the Florida court which said he was not the father. He had no children of the marriage. If you look at the master's recommendations to the judge, the master's recommendations says there is no evidence that there are children of the marriage. That's quite different from saying there are children of the marriage. Did he challenge it? Go ahead. No. I was going to say what the master says is one thing. What your client says is another. He was asking for a divorce, and he filled out a form or whatever he did that said there were no children. Right. Did he ever say to the judge, that's not correct, I want either a divorce or decree that says I am a father or I may be a father, or did he just leave it with what he had said to the court? He wanted to resolve whether or not this child was his. And did he say, I don't want a decree saying I am – I have no children, which is what he initially asked for? Did he say, that's not the kind of decree I want? I don't know whether I have any children? Okay. Let me start from the beginning, because I think it's important to keep the time sequence. When he filed his petition for dissolution, he didn't even know she was pregnant. Uh-huh. The first – That's, again, a contested fact, but that's his point. Well, we're taking our side, because we lost. Right. Okay. All right. You know, so the very first step is, I don't have any information at all. And then she responds with her letter, and his first reaction is, well, two years ago, she told me she was pregnant and she wasn't. And I just can't trust what she has to say. But he also said he wasn't going to discount it entirely and just live in a dream world. He went to the court and he said, I would like to have a paternity test to decide whether or not this is my child. And where are you looking for deceit? You say there was – it was actually ordered. Where do we – how do we know that? I don't think the – yes. It comes from my client's declaration that he requested and received a paternity test. I see. The request is in there, but not the received. Right. All right. Go ahead. So, you know, as the case moves on through the summer and she's failing the voluntary maintenance program, my client is then pressuring the social workers again for a paternity test and not getting it. And I wanted to get to the issue of this judicial estoppel, which is we've been sort of – Well, that's what I think. That's what I'm talking about. Just sort of dancing around it. And one other question is, before the court, Florida court, entered a decree that said there are no children, did he say to anybody, I know I said there are no children, but I don't want a decree that says there are no children because I'm – despite my initial request, because I now believe that I'm the father or I now believe that I may be the father? Or did he allow the court to enter a decree without objection that said he was not the father? There's nothing in the record as – with respect to that, but I think he was just as much in the dark at that time as he was when he first learned that she was pregnant with somebody's child. I think the point that I want to get across here is that my client did everything that he knew how to do without legal training. Well, he had a lawyer, you see. I mean, suddenly, you know, he had a lawyer who could have told the Florida court, we don't know whether he's the father. We said he's not a father, but before you give a decree that says he's not a father. Yeah. And what I refer back to is the master's report. Does this – once there was a Florida termination that he wasn't the father, does that go to the question of whether he was the presumed father or the alleged father in California and therefore entitled to notice? Or would it go to his constitutional rights? In other words, what ultimately does it matter for exactly? Well, presumed father – oftentimes – In other words, if he was a presumed father, but the Florida said there were no children, is that a rebuttal of the presumption, so he's no longer a presumed father? Or in California, can you not rebut the presumption of a presumed father? Well, the Florida court proceeding was sort of in the nature of a default. I'm sorry? I understand that. I'm just trying to understand whether the fact that the Florida decree said that he wasn't the father, however it got there, is dispositive of either his California State rights as a father to have notice or his constitutional rights to have notice. Gotcha. Okay. First of all, he was a presumed father under California law because he was married to the mother. So he was conclusively presumed to be the father of the child. That's not a rebuttable presumption. It's an irrebuttable presumption unless, I think, there's an exception for stability or something. But what I understand to be said about that by the defendants is, well, he never even proved that. He never even proved that he was married to the mother. Oh, there's no dispute that he was married to the mother because – and the department knew it, and the documents are in the excerpts of record. They both agree that they were married to each other. Because there's some notion that he had to be elevated to the status of presumed father, whatever that means. That was the social worker's take. At least that's what she says. Now, she may have missed the issue. But as soon as you hear they're married and the child's born from the marriage, then if you are a social worker in California, you know that that is the dad and that that is entitled to all the rights. So isn't there a better argument or what's wrong with the argument that all of this doesn't make any little difference because he was still entitled – he was still the father as far as California was concerned? Yeah. I make that argument. Well, I want to know why isn't the relevant argument. Why are we worrying about what they said in Florida? I'm sorry. Why are we worrying about it? Why are we worrying about the Florida decree, then? I'm not worried about it. I understand that. But in order to have judicial estoppel, you have to have a conflict. Is the statement in Florida in conflict with either his California or constitutional rights to have a notice? Because that's ultimately what we're here about. Right. Well, there does appear to be, at least facially, some conflict between the court – between the Florida judgment and what was going on in California. But it's a conflict that probably would have disappeared had my client been informed of what his true legal status was. Now, if he had known that he was the presumed father and they didn't even need to do a paternity test, because presumed fatherhood is presumed fatherhood regardless of biology. But aside from what he knows, if he – if the social workers had an obligation to give him a notice, all these notices, because he was the presumed father, whether or not he was the biological father, then it doesn't matter if he was the biological father, unless it matters for the constitutional issue, which is the other thing I want to ask you. Does it matter for the constitutional question? Because ultimately you're here on 1983 cause of action, whether he has – he has to have not only a California right to the notice, but a constitutional right to the notice, doesn't he? Yes, he does. And does that depend on him being the biological father or not? That's a good question. I don't have the answer to that question. I think that he has standing because he is the biological father as we look backward. Right. But I want to know whether they were constitutionally violating his rights by not giving him notice if he – all they knew about him up to that point validly was that he was at least the presumed father. Well, they – yeah. They should have known he was a presumed father. Okay. But does that give him a constitutional right to notice? It does. It does. I mean, he has a legal relationship with the child. Let me ask you another question. You said it's an irrebuttable presumption. Does that mean a California court cannot declare somebody else to be the father? Well, I don't know. I mean – Well, it must be. Our world is getting very strange. So, I mean – But that was the common goal, wasn't it? I mean, certainly originally that was the rule. You're the father, you're the father. Because they didn't want anybody asking questions. The whole idea was they didn't want to ask the question about whether somebody else was the father. Yeah. They didn't want to have the shame. So – But somebody wants to come in and say, this is my child. I want to be declared the father of this child. I'm going to support him. You can't do that? Yeah. Yes, you can, Your Honor. You can do that. You can go in there and assume responsibility, especially if the child is living with you. And that means that the presumption can be rebutted. Well, I don't know. Maybe you have to – If the presumed father, though, continues to say, no, I'm the father, I'm the official legal father, and I just don't want any part of this guy, can he do that? If there's someone else there – If there's someone else who's coming forward and saying, I'm the biological father, can the presumed father say, well, you just don't get to do that? As long as I'm willing to take the responsibility for this child, and I am, and he's my child, and you – you just can't do that. That's what I think needs to be the law. I don't know whether it is the law. Right. Right. You know, usually we don't have fathers fighting that often over children. So – and I haven't come across this in my experience, so I don't know exactly if that would be handled. Two fathers have presumed father status, or one is the biological father and one is the presumed father on some other ground. Would the California presumption survive a decree in Florida saying that – I believe it would. – the plaintiff is not the father? I believe it would, because I'm not even sure Florida has jurisdiction to determine anything about children in the marriage where the child resides in another state. And the only real thing Florida could do in this case was to dissolve the marriage based upon my client's residency in Florida. But all other issues would have had to be litigated in California because that's where the child was. But he also – he never told – he certainly never told Florida that there was no child born of the marriage while the marriage existed. He never told Florida that, right? He did. Well, I mean, when he filed his petition. He never told Florida that there was not a child born of the marriage, whomever the father was, while the marriage existed. No, he didn't put it that way. I mean, I think he put it – to me, when you look at the entire record, and the inferences have to be drawn in our favor, there was a question mark in his mind. In his mind? What was in the record? I mean, he did say there's not only no child born of the marriage, but that she was not pregnant. There was no child that was – that she became pregnant with during the marriage. Well, you know, I think he had left so many months before the child was born. Okay, but he never corrected any of those things. He never disagreed with the proposed decision by the judge. He never disagreed with the master's report. Well, I think what he told the Florida courts is what he told the Florida courts, that I'd like a paternity test, I'm not sure. I don't have any evidence that I'm this child's father. That's what he told them. And you can glean that from the master's recommendation. Because they don't say – you know, he came in and said there's no child. You know, the question ultimately under this test of judicial estoppel is what the equities are. And there may be different equities in a case where if you were trying to get custody of the child, then there are, and whether he should be able to recover from a social worker. You look at the equities in – and the district court looked at the equities of allowing recovery in this type of a case. And our standard, as I understand it, even though it's summary judgment, our standard for review of that equitable decision is a piece of discretion. Can I ask one last question, even though you're way, way, way off your time? In two sentences, what is your underlying constitutional cause of action? How would you describe it? I would describe it as a Fourteenth Amendment procedural due process violation. And I would also describe it as – Hinging on the fact that California says you're supposed to have gotten these notices or hinging on some – just on the relationship with the child? No. Here I'm talking about notice, an opportunity to be heard. On that basis, that was violated. The second violation is the more substantive violation of the interference between a parent and a child. So, you know, cases such as Santosky talks about and all of those cases. So a substantive due process, which then starts drawing in the failures to – your alleged failures to be California law? The alleged failures to be California law with regard to notice. Right. So we have a substantive and a procedural violation. And he was delayed having his child back for almost a year. And if the Court has any other questions – I know we didn't get to qualified immunity or absolute immunity, but if the Court has any other questions, I'd be happy to entertain them. Let me be sure. The procedural due process issue was the allegation that your client didn't receive notice? Correct. And I would also, you know, back that up with just some other pertinent observations from the record, which would supply motivation for that happening. This was a newborn child prime adoption material, blonde hair, blue eyes. The social worker didn't like my client. She didn't think highly of him, even though she'd never really met him. Just talked to him on the phone. And the other thing that I think impacts it is the fact that this case was on adoption track, and there was a foster family that had been lined up. And that family was, you know, really looking forward to adopting this child. And I just think that as a result of that, those – that constellation of facts, that there would have been a motivation on the part of the social worker to keep the father out of the picture as much as possible. If we assume there was no notice, is – was the district court wrong in concluding that the defendant had immunity in her prosecutorial rule? Yes. Absolutely. Well, what case law – I was hoping to let this go, but what case law is there about – I mean, what she apparently didn't do wrong was – what did it wrong was apparently send out a ministerial notice, essentially, that she should have sent. Is your allegation. And there's no real case law about that. I mean, usually you're looking at the social worker either as an investigator or as a prosecutor, meaning, you know, beginning the prosecution. But, I mean, in our court, the clerk's office sends out the notices. So why is that something for which she is being – she is tantamount to a prosecutor as opposed to tantamount to a clerical? Well, it's true that our – And does it matter? In which way does that cut? I don't know. Yeah. It's true that our case law has depended largely upon the dichotomy between the investigative phase of the case and the initiation and prosecution of a dependency case. It falls along that line. And Beltran makes clear that the social workers cannot lie to the court in order to obtain a warrant for custody of a child. All right. But that's not what she's alleged to have done. No. What's happening here is that another part of the description of what absolute immunity allows or what it's really about is to protect the advocate, the prosecutor as an advocate, protect the social worker as an advocate. And it's just our claim that if instead of putting the notice in the mailbox, you put it down the gutter, you're really not engaged in any kind of advocacy for which the absolute immunity should apply. But if you tried to sue a prosecutor for not sending you, you know, notice during a trial about something he was supposed to send you notice about, do you assume that would be wrapped up in absolute immunity? You know, one notice, I don't know that that may be, but here we had several notices that were not given. Yeah, but that may go to malice, but it doesn't go to the character of the Act. Well, I mean, I thought there was a noticeable absence in the briefs of any discussion of this problem, because it's not a Beltran-like case. Right. The way the only way I could describe it in the brief is to say that this is a kind of ministerial act that is not part and parcel of the presentation of a case, and for that reason should not be covered by absolute immunity. And as the courts have always said about absolute immunity, it's a very narrow doctrine to be applied in a very limited way, because it has so much power. How about qualified immunity? Well, in qualified immunity the district court didn't address that issue. I understand. But since it was raised on appeal, we responded to it. And the question in the qualified immunity is could a reasonable social worker believe that it's okay to go into court and present a case without ever having served the other side, without ever having given the other side notice of the proceedings. And the closest case that we really could come to on that point would have been Cody v. Connecticut, which involved basically the court making it impossible for people without money access to the court. And this is, I think, a very similar thing, because it's the way you framed the question, it suggests that the we have to assume that the absence of notice was deliberate on the part of the defendant. Well, I think that you can infer that on a number of grounds. First of all, the number of notices that were not delivered would indicate a deliberate failure to serve notice. I think you're saying perhaps that if one got that far, it would require a remand for the termination of factual issues. Is that right? Well, absolutely, because this is, you know, this is a conflict in the evidence. And what we see is notices that were supposed to have been given that were never given, coupled with phone calls in which the social workers refused to inform Mr. Murray about where and when court would be taking place, refusing to give him any tools or information by which he could get a lawyer who understands this rather specialized area of the law, couldn't find anybody from 3,000 miles away. So when you couple all of that together with the motivation to have this adoption go forward and with this kind of, like, not really holding Mr. Murray in much esteem, and you put all of these together, you build a circumstantial case for the notion that the social worker had motives and took steps to keep him out of the case and that it was deliberate. And that's a triable issue of fact that needs to get to jury, not be decided by a judge. I understand. Thank you. Thank you. Your Honor. Good morning. I know it's almost afternoon. May it please the Court. My name is Janet Holmes. I'm deputy county counsel for Contra Costa County. Pleasure to be here. I don't know quite where to begin, because so many issues were addressed, but I will begin by abandoning my entire prepared oral argument and talking about the issues that were raised. Always a good idea. By the Court and addressed by appellants' counsel. First of all, I just note for the record that there is no evidence of this marriage other than the party's statements in documents. A marriage certificate was never presented, although we have a divorce decree. Absolutely. But no marriage certificate. And the problem here is, and this is kind of really going outside the case briefly, but people show up all the time and say, I'm married, and this is my husband, and he's my baby's father. And these sorts of declarations, so to speak, are frequently made in child and family services proceedings. And immediately what's asked is, let's provide a marriage certificate. And we have none before us, which does complicate matters. Well, she was the mother was claiming that he was, she was married to him and that he was the father, and he is considered the alleged father as a result, right? That's right. But not presumed at that point. Right. But, I mean, it seems to me there was at least enough reason to think that perhaps he was the presumed father that you could have asked her or him whether they were in fact married. Nobody really doubted that they were married. There was a request for a marriage certificate, and I don't think there's any debate about that. None was provided. But certainly the request was given to both parents, and I'm not sure that that's explicit in the record, unfortunately. But Ms. Andrade's declaration is contained at the excerpt of records, circa pages 40 to 48 or so, and that would be my reference for that. But how judicial stop-and-think? Presumably if they got a divorce decree, that would have been good enough as well, no? Well, that's another issue, because he tries to get an annulment and it's not quite clear, but that was never before the case. Well, that's what I was about to ask you. Did Ms. Andrade ever have the divorce decree or the divorce papers? I believe ultimately she did. There were divorce papers provided by mother, and those are attached to Ms. Andrade's declaration. That's what she received from mother. But I think the timing on many of these issues is very critical here, and there's no debate that by April 16th of 2006, just two months, less than two months after Baby J was born, Mr. Murray was aware of this baby and was aware that Children and Family Services was involved. And it wasn't until after October of 2006 when he admits the Department of Child in his cooperation in providing financial support for the baby, and that's the excerpt of record at page 16, paragraph 13, that Mr. Murray stepped forward at all to inquire and pursue. But that's in vast dispute, is it not? Well, at least as far as his actual phone call to the court. He never made a phone call to the court. He called all the several different social workers many different times. And, Your Honor, he's absolutely right. There's a dispute over those things. But there is no dispute that he was. Well, but that's stepping forward, no? He was, but he was not. He certainly wasn't hiding his head anyplace. He wasn't disappearing. He wasn't they knew where he was, they knew where to find him. And he was trying to contact them. He says they were not calling him back. One of the disturbing things about this case is because of the conflict, just vast conflict, if the record were fleshed out in the fashion that he claims existed, it would probably look very different if he, in fact, had all these conversations with people and made all the phone calls he said he made and so on. It would be hard to say that he was trying to hide the ball. Which is why my argument on judicial estoppel is first in the brief and I believe is the strongest argument. What undisputed facts do you rely on? The undisputed facts upon which we rely are encompassed primarily in the Florida divorce decree proceedings, certainly insofar as the judicial estoppel. But even on that, he claims that he was asking the social workers to arrange a paternity test well before the October divorce decree. Does he not say that? He does say that he requested. I think he's more focused on that he asked for it in Florida. But he also says he asked for it, he spoke to the social workers and asked for a paternity test. And I'm not quite, I don't recall exactly the timing on that, to be candid. He did offer. Well, the divorce decree wasn't until October. Right, right. Or September, late September. And he was in contact with Ms. Andrade by that time. And I think her declaration is that she did offer paternity testing. And I guess he either doesn't recall that. In any event, he denies it. Right. So that's why it's, to me, really, really difficult to judge even the judicial estoppel claim without knowing the facts of the case. But the problem with the judicial estoppel claim, from Appellant's standpoint, I think, is this. Appellant spends a great deal of time trying to explain away the position that he took in the Florida court. That's irrelevant. If he took a position that was plainly inconsistent with the position that he took in the California court. But it's ultimately an equitable standard, right? That's right. He didn't take any position in the California court until October. Well, the thing that's interesting is he didn't take a position in the California court in the child dependency position until later. But he's also seeking to avail himself in the Federal court. And I think this is the more inconsistent position. He's trying to avail himself in the Federal court of a duty beginning in August of 06 to give that child to him when he's at the same time in Florida in State court alleging he's not the father. And the timing here is so critical. He's trying to tell me. Well, is he alleging a right to give the child to him or to give him notice? Well, and that's he wants damages for not having been given his child in August. And he is telling the Federal court right down the street here, I need money. Well, maybe he loses that eventually, but that really isn't the current issue. The question at the issue at the moment is, should he have been given the notice? Maybe there's a damages causation problem, but that's not the issue at the moment. Well, and there's no question he had a conversation in August of 06 with Andrade. He got at least some notice at that period of time. But he says that he was not given the notice he was supposed to be given in various hearings. And I don't think that it's before the court how many. It may have been two. You know, appellant acts in oral argument as if there were, you know, notice. Well, even if there was one, and if he had a constitutional right to get it, then he has a lawsuit. Then we find out whether he has damages and what it caused and so on. Well, and I don't even concede that he had a constitutional right to that notice because of the issue of whether he was alleged or presumed by that time, because there had been no marriage certificate provided. But the thing I want to say is that until there was a marriage certificate provided, there was a divorce decree provided at some point. So that was pretty good evidence that there was a marriage. And after the divorce decree, he still hadn't been, wasn't getting notices. According to him. You say yes, he says no. Well, but query when the divorce decree, I don't even think the divorce decree was provided to Ms. Andrade. That's not what is attached to her declaration. Ms. Andrade had. Well, until he had the divorce decree, you don't have a judicial estoppel problem. Right? Well, no. He took the position from the get-go. Yes, but until it prevails, there's no judicial estoppel problem. Fair enough. And the judicial estoppel. So if she never had the divorce decree, then there would be a judicial estoppel. She wasn't in any way misled and she still should have been giving him the notices. The judicial estoppel I'm focused on here, and you have to understand, my position is there are actually three courts where the judicial estoppel applies. And where I'm looking is to this Federal court where this guy is trying to say, I had a right in August of 06, I have been deprived of my right to familial association of all this stuff, beginning in – I am entitled to damages beginning in August of 06, when in September of 06, there's a recommendation report from the special master, of course, a year before he had filed for divorce. He's had four opportunities to correct this error. He filed for divorce in July or August of 05, that there were no children of the In July, Mr. Andrade filed a reply to the mother's assertion that there was going to be a child. In September of 05, he filed a reply, responded that there was no child at all. Then a year later, there's a special master's report that there was no child. And in October, there was a judgement entered that there was no child. And then he comes to Federal court two years later. Kagan. Andrade never saw, so why did it bother him? I beg your pardon? But we should now say Ms. Andrade never saw. Right. But my focus is on this Federal court, on the Federal court where he's asserting an inconsistent position. The inconsistent position is not only in State court, it's in Federal court. He wants money damages during a time that he had asserted in Florida he was not the father. He's asking this Federal court to sanction an award of damages against Ms. Andrade and in his favor for a period of time that he was in Florida averring four times that there were no children of the marriage. And then he comes to the Federal court and says, never mind. I'm not clear. Are you suggesting that the Federal district court was misled by the inconsistency? Yes. In what way? Well, because the district court did not know what the plaintiff's position was? No, his complaint, his complaint in Federal court is inconsistent, legally inconsistent with his position in the Florida court that he was not the father, because his complaint in Federal court says in August of 06, I should have been awarded that child, I should have gotten notice, I should have had my baby. Do you know what is California law with regard to whether he was nonetheless still the presumed father after the Florida decree? You know, I heard your question, and that's one of the things I was going to address. I have two stars by it. I don't know. Two stars? I have it. It's the one thing in all my notes that has two stars. And I don't know. What a great question. Now, I gather that the presumption actually is rebuttable in California. Is that right? Yes. It has to be, especially these days, right? So, yeah. Fathers are coming forward all the time to claim children which 20 years ago would never have been claimed. So it's rebuttable, even though the old common law purpose was we just don't want to know. That's right. That's right. But as a practical matter now, and there's all sorts of newer case law on this, that it's rebuttable. So, and fathers are coming forward and offering to care for children that 20 years ago they would have poo-pooed. So it's a different world, and the law has evolved. Okay. Do you want to address, or are you going to address absolute immunity? I will very, very briefly. And this is one, you know, it's interesting as things evolve. This is an area where I feel somewhat passionately. These social workers take on a prosecutorial function that many lawyers would shy away from. And just as an aside, the question very briefly about the notice issue. I think to be candid, the courts used to give these notices, used to mail notices in Contra Costa County, and the notice function has shifted to the county because of resources. Over the years, over the years, the county has been called upon to provide far more of the clerical function. But that's why it seems odd to talk about absolute immunity for something that's really a clerical task. I understand that. I understand that. But she is filing pleadings. I mean, there's no question she files a dependency petition. She's filing pleadings with the court, and she drafts them, and believe it or not, they're not even looked at by us. But that's not what he's complaining about. He's not complaining about any of that. Yeah. Okay. But in any event, she is in a prosecutorial function. There's no question under the Myers case that that's well established. That's in the brief. And there's also no question that this is not a Beltran situation at all. And so for that reason alone, I think that the absolute cause of prosecutorial immunity must apply. The social worker has to be able to go forward. Her duty and her passion as well is to protect children. And that's what the immunity is designed for. It's a public policy reason. And ultimately, I think that's the most important factor there. If the court doesn't have it, I'm well over my time, and it's almost my time. It's probably going to be long past soon, but do you concede unqualified immunity? Oh, no, absolutely not, Your Honor. And I briefed it, and I think it's relatively well briefed. I appreciate the Court's suggestion that perhaps it might need to be addressed on remand. I think the facts are sufficient here, and that's why I briefed it the way I did, to have the matter resolved by this Court. And that is not without precedent. But ---- Thank you, counsel. Okay. Thank you. We can give you a minute or so, or maybe a minute and a half. But you don't need to take it, either. I take the hints. I have no further remarks. It's not a hint. It's just a hint that we're biased. If you have something you really want to say, you know, I think I've covered everything. All right. Good. Thank you very much. The case is arguably submitted, and we will take a brief noontime recess.
judges: Pollak, Reinhardt, Berzon